*243 The opinion of the Court was delivered by
Ward raw, Ch.
In this case, the defendant’s counsel so far from contesting the authority of the Court to decree specific restitution of slaves to the owner of them for a term of years only, expressed desire that the Court should entertain jurisdiction of the cause. The consent of the parties to a litigation simply will not confer jurisdiction on any tribunal, where the matters in controversy are foreign to its general course of adjudication; but if, as in this case, the general subject be within the authority of the Court, as commonly exercised, and the question be merely whether or not a particular case be exceptional, the Court may well proceed to judgment on the concurring desire of the parties, without being astute to find reasons for evading the labor of trial and decision. The circuit decree exhibits the opinion of the Chancellor uninstructed by argument on the jurisdiction of the Court in the special case, but this Court, anxious to avoid even the appearance of usurpation, reserves its opinion whether any but the absolute proprietor of slaves be entitled to the peculiar remedy of equity of specific delivery or execution, refused generally as to personalty, and not hitherto applied as to slaves except in behalf of the complete owner, nor as to him where damages assessed by a jury would afford ample redress. Certainly there is difficulty in distinguishing the case of the owner of slaves for life or for years from that of the absolute owner, as affording grounds for refusing our peculiar remedy to partial proprietors and extending it to absolute proprietors. But a portion of us here would have preferred that the bill had been dismissed by the Chancellor for lack of jurisdiction, although we do not feel obliged to dismiss it in this appellate tribunal when no party proposes such course. We decide to decide nothing, or in other words, to exclude conclusion as to the jurisdiction of equity in this case.
The only matters presented to us by the appeal affect the extent of compensation to which the plaintiff is entitled for the tortious taking from his possession by defendant, and the *244 unlawful detention for three months and a half, of certain slaves hired by plaintiff at the rate of one thousand dollars a year. The primary decree ordered the commissioner “ to in- , quire and report as to the extent of loss sustained by the plaintiff on account of the capture and detention of said slaves by the defendant.” The commissioner, on speculative considerations as to the diminution in the extent of crop which plaintiff might have made, allowed to the plaintiff $1,080, besides recommending that the plaintiff should have $300 more for fees paid to his counsel. Defendant’s exceptions as to this mode of ascertaining speculative or vindictive damages, presented in various forms, were sustained by the Chancellor, and the report was recommitted to the commissioner, with instructions to ascertain “the actual loss sustained by plaintiff from the capture and detention of the slaves mentioned in the pleadingsand from this judgment defendant appeals on several grounds, not necessary to be specified, asserting in substance that compensation to plaintiff consists in remuneration for'his possible losses. The substantial question is whether equity in such case should confine itself to compensation for loss, or pursue vagaries in the wilderness of damages through which juries wander. Damages are not commensurable by rule, and cannot be adjusted satisfactorily in a tribunal proceeding for compensation and not for revenge or punishment As to such matters, juries have a discretion undefinable by strict rules, but it is contrary to the great principles of right and liberty that discretion should be unnecessarily extended. The Chancellor acted'on the judgment in Bird vs. Rail Road Company, 8 Rich. Eq. 57, so obvious in principle to common sense and to freedom as to require no further illustration. There the Court perceiving that the defendant had derived no actual profit, and that plaintiff had suffered no loss except from the trespass and tort of the defendant, and that a jury is the fit means of ascertaining damages strictly, said : “ the object is to ascertain the amount of loss which the plaintiff has sustained by the wrongful acts of the defendant.' Th'e plaintiff, by *245 applying to this Court, waives all claim for vindictive damages, and the actual injury and loss may probably be as well ascertained before the commissioner as by subjecting the parties to the delay and expense of a trial at law.” All the objections which overrule the allowance in this Court of vindictive damages apply with equal force to the allowance of damages which are speculative, and not proceeding proximately as consequences from the acts of a wrong doer. The organization of this Court is adequate for the ascertainment of actual loss, not for the assessment conjecturally of possible profits and damages. I suppose on the authority of Harrison vs. Berkley, 1 Strob. L. 525, which is a careful review of the cases on the subject, that the Court of law would not sustain a jury in finding damages remote and speculative, and not proceeding as proximate consequences from the acts of the wrong doer. I am more assured that if in this Court we allow under the name of compensation possible damages for an unplanted crop, we might as safely proceed to give damages for a gold mine which might have been found by a laborer, or for any other thing suggested in the visions of Eastern romance.
It is probable that the defendant, in this case, .acquiesced in the jurisdiction of the" Court, as to the specific delivery of the slaves, on the notion that if he were decreed to restitution of the slaves, he would be compelled only to compensation for his improper detention of them. He never meant to waive a doubtful question of jurisdiction here, and at the same time to subject himself to the highest damages for his wrong that could be awarded elsewhere. He says, practically, I submit to your authority to determine the question as to the rightful possession of the slaves, provided you pursue your procedure in compelling me to compensate for my wrong, and not to punish me in unfettered discretion for conjectural and unfor-seen damage to my adversary.
We find reasons for supporting the Chancellor’s judgment. He did not mean, and in his oral judgment expressed the contrary, nor do we mean that plaintiff should be restricted *246 to an aliquot portion of the hire he agreed to pay for the year. Possibly, in connection with the purchase of the plantation, plaintiff obtained the negroes on hire at undervalue. His actual loss is the value of the hired slaves for the time they were out of his possession. It is suggested that “positive evidence of the actual loss in this instance is out of the question.” Why? It is the daily practice of the Court to obtain the value of hire of slaves in the possession of trustees, or of persons not entitled to possession, on estimates of witnesses of what the slaves would bring on the block at auction, or of their annual worth under all the circumstances of the case. There is no special difficulty in this case.
It is ordered and decreed that the appeal be dismissed, and the decree be affirmed.
\
Dunicin and Dargan, CC., concurred.
Appeal dismissed.